

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable R. A. Barton
County Attorney
Calhoun County
Port Lavaca, Texas

Dear Sir:                    Opinion No. O-6817

Re: Whether the City of Port Lavaca,
Texas, is authorized to use sea-
wall funds derived from a tax re-
mission for the purpose of replac-
ing, raising, and strengthening
the inside bulkheads of the re-
taining wall, when the retaining
wall is on the inside of the Mu-
nicipal Harbor.

We have received your request for our opinion on the
hereinabove-captioned matter, and we quote from your letter as
follows:

"Since the recent tropical hurricane, the City
of Port Lavaca is faced with the necessity of restor-
ing and rebuilding a section of the existing seawall
and breakwater protecting the City's property.

"In view of the fact that your Department has
already made certain rulings with regard to proposed
use of the revenues derived from the Tax Remission
Act of 1941, the City Council has requested a ruling
from your Department before the proposed repairs are
made or any expenditure is authorized out of the Sea-
wall Fund.

"In order that the question may be made clear
to the the Department, I am enclosing a sketch show-
ing the location of the proposed repairs.

"Some twenty years ago, the City extended the
North end of the existing seawall by the construction
of a 14 foot bulkhead out to the mouth of Lynn's Bayou--
the outer surface was faced with limestone riprap.
Behind this fourteen foot wall, the city, with the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable R. A. Barton, page 2

aid of Federal Funds, dredged out a storm harbor as a terminus of the Intercoastal Canal. The harbor is owned entirely by the City.

"During the recent storm, the water reached a height of over 15½ feet, passing completely over the 14 foot seawall and into the basin. The action of the water, and storm tossed ships and wreckage, eroded partly across the seawall and undermined the retaining wall or bulkhead on the back side.

"While the retaining wall is on the inside of the Municipal Harbor, our City engineer states that it is necessary to replace, raise, and strengthen the inside bulkheads in order to support the outside seawall.

"Under this fact situation, will it be legal for the City to use Seawall Funds derived from a tax remission for the purpose of repairing, raising, and strengthening the inside section of the seawall, even though the same also constitutes the inside bulkhead of the Municipal Harbor?"

Section 7, Article 11, of the Texas Constitution reads as follows:

"All counties and cities bordering on the coast of the Gulf of Mexico are hereby authorized upon a vote of two thirds of the taxpayers therein (to be ascertained as may be provided by law) to levy and collect such tax for construction of sea walls, breakwaters, or sanitary purposes as may be authorized by law, and may create a debt for such works and issue bonds in evidence thereof. But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund; and the condemnation of the right of way for the erection of such works shall be fully provided for."

Section 8, Article 11, of the Texas Constitution reads as follows:

"The counties and cities on the Gulf Coast being subject to calamitous overflows, and a very large

proportion of the general revenue being derived from these otherwise prosperous localities. The Legislature is especially authorized to aid by donation of such portion of the public domain as may be deemed proper, and in such mode as may be provided by law, the construction of sea walls, or breakwaters, such aid to be proportioned to the extent and value of the works constructed, or to be constructed, in any locality."

House Bill No. 7, Chapter 485, page 780, Acts of the Forty-seventh Legislature, Regular Session, 1941, reads as follows:

"Section 1. It is found and declared that the City of Port Lavaca is a city situated on the Gulf Coast of the State of Texas and is subject to calamitous overflows and that a very large proportion of the general revenues of the State is derived from this otherwise prosperous locality.

"Section 2. For a period of twenty (20) years, commencing on September 1, 1941, following the passage of this Act, there is hereby donated and granted by the State of Texas to the City of Port Lavaca, Calhoun County, Texas, all of the net amount of all State ad valorem taxes levied and collected for State general purposes, on all property, real and personal, including the rolling stock belonging to railroad companies (which shall be ascertained and apportioned as now provided by law) in Calhoun County. Said money when received by the City of Port Lavaca shall be used by such City as an agency of the State of Texas, in the manner provided in this Act, for the construction, repair, and improvement of sea walls, breakwaters, and harbors.

"Section 3. At the end of each month, the Assessor and Collector of Taxes of Calhoun County shall make an itemized report under oath to the Comptroller of Public Accounts of the State of Texas, on forms to be furnished by the Comptroller, showing the amount of all ad valorem taxes collected by him for State general purposes upon real and personal property within the County of Calhoun, including rolling stock of railroad companies as hereinabove provided; and he shall accompany the same with an itemized statement showing full

disposition of all such taxes collected. The said As-
sessor and Collector of Taxes shall forward his report
to the Comptroller, and shall make a like report to
the City Treasurer of the City of Port Lavaca, and he
shall pay over to the City Treasurer of the City of
Port Lavaca all of the moneys collected by him from
State ad valorem taxes levied for general purposes
during said month, less such amounts as are allowed
by law for assessing and collecting same. On the oc-
casion of each such remittance the City Treasurer
shall execute a receipt in duplicate showing the
amount of money thus received, forwarding one exe-
cuted copy to the Tax Assessor and Collector of Cal-
houn County and the other executed copy to the Comp-
troller of Public Accounts of the State of Texas.

"Section 4. The City of Port Lavaca, acting by
and through its governing body to accomplish such
State purposes, shall have authority and is hereby
authorized to issue its negotiable bonds secured by
a pledge of the tax moneys donated and granted by the
State of Texas and said governing body in its discre-
tion may secure such bonds additionally by a pledge
of its own taxing power, and the proceeds of the sale
of such bonds may be used for the purpose of construct-
ing, repairing, and improving sea walls, breakwaters, and
harbors to protect said locality from such calamitous
overflows; provided that no new construction or im-
provement shall be made or contracted for in the bay
on the east side of the present sea wall unless or un-
til all privately owned lands, leases, and easements
between said proposed structure and the present sea
wall shall have been secured by the City of Port La-
vaca by purchase, gift, condemnation, or otherwise.

"Section 5. Bonds issued by the City of Port La-
vaca under authority of this Act shall be governed by
the General Laws of the State of Texas applicable to
bonds issued by cities and towns, including the provi-
sions of Titles 22 and 28 of the Revised Civil Statutes
of 1925 and Amendments thereto, and if the bonds are to
be secured by a pledge of the taxing power of the City
of Port Lavaca the proposition submitted in the election
for the issuance of said bonds shall contain a reference
to the fact that such tax is authorized. The bonds

Honorable R. A. Barton, page 5

issued by the City for such purposes shall not exceed an amount or amounts which could be serviced both as to principal and interest with such donated taxes based on the latest approved assessed value of property, including the value of rolling stock apportioned to such County, in Calhoun County, at the time such City proposes to issue said bonds, and based on the average tax rate levied by the State of Texas for General Fund purposes during the ten (10) years preceding the year in which said bonds are to be issued. After bonds shall have been voted originally under this Act subsequent issues may be voted as required. Bonds of an issue may be delivered at one time or from time to time as and when the money is needed for such purposes. The money received by the City from such donated taxes shall be used to pay the principal and interest of said bonds and shall not be diverted to any other purpose.

"Section 6. To the extent that money may be accumulated in the sinking fund from such State donated taxes in excess of current requirements for principal and interest and to provide such reserve as may be prescribed in the ordinance or ordinances authorizing the issuance of said bonds, it may be invested in accordance with the General Law applicable to cities. The use and diversion of moneys herein granted for any purpose other than the payment of interest and principal on the bonds voted hereunder or invested in accordance with applicable laws is hereby prohibited and the violation of this section shall constitute a misapplication of public money and the person or persons so offending shall be punished as provided for in Article 86 of the Penal Code of the State of Texas.

"Section 7. The fact that this Act is designed to protect a locality situated on the Gulf Coast from calamitous overflows, and the fact that a very large proportion of the general revenue of the State is derived from such otherwise prosperous locality create an emergency and imperative public necessity that the Constitutional Rule requiring bills to be read in each House on three separate days be suspended, and said Rule is hereby suspended, and that this Act become effective immediately from and after its passage, and it is so enacted."

Honorable R. A. Barton, page 6

In our opinion No. O-4117, addressed to you, we held as follows:

"We are, therefore, of the opinion that House Bill 7, supra, wherein it seeks to remit taxes to construct seawalls or breakwaters is not violative of the Constitution of Texas, but that it is unconstitutional insofar as it seeks to remit taxes to construct harbers. We further held that the striking of the word 'harbers' from the bill does not invalidate the balance thereof."

In compliance with the provisions of House Bill No. 7, the City of Port Lavaca issued City of Port Lavaca Seawall and Breakwater Bonds in 1941, and the City Commission made the following statement in the election order, notice of election, and ordinance authorizing the issuance of bonds:

"For the purpose of constructing, repairing, and improving seawalls and breakwaters to protect the City of Port Lavaca from the continuing and re-occurring calamitous overflows, which improvements are, in the opinion of the City Commission, essential to adequate protection of said city."

In the case of the First National Bank of Port Arthur v. City of Port Arthur et al, 35 S. W. (2d) 258, the Beaumont Court of Civil Appeals said:

"Counsel for appellees, in their brief, call our attention to a number of general rules of construction pertaining to constitutional provisions. One of these rules is that referred to by our Supreme Court in Walker v. Meyers, 114 Tex. 225, 266 S. W. 499. The general rule there referred to is that contemporaneous and practical construction of constitutional provisions by the Legislature in the enactment of laws should have great weight and give rise to a natural presumption that the legislative construction rightly interprets the meaning of the provision. In connection with this general rule, counsel for appellee in their brief direct our attention to the several acts at different times of the Texas Legislature granting aid to Gulf Coast cities under section 8, article 11, of the Constitution. One of these is the act granting aid to the city of Galveston shortly after the destructive gulf hurricane in 1900.

Another is the act granting aid to the city of Corpus Christi; another is the act granting aid to the city of Freeport; another is the act granting aid to the city of Rockport; another is the act granting aid to the city of Port Lavaca; another is the act granting aid to the city of Aransas Pass. In this connection counsel contend, and undertake to sustain the contention, that the Legislature in each of the instances above stated gave a broad and liberal construction to section 8 of article 11 of the Constitution and that the Legislature in these instances did not construe that section to limit state aid to Gulf Coast cities for the construction of sea walls and breakwaters, that is, to those physical structures themselves, but construed section 8 in a broad way so as to give aid to those Gulf Coast cities in the construction of works not actually a part of a sea wall or breakwater. We shall not dwell upon this suggestion of counsel, though we are impressed with the force of this suggestion and the argument in connection. Other general rules of interpretation and construction may be said to be the following:

"1. The intention of the makers of the Constitution will be ascertained, and when that intention is so ascertained, whether expressed in plain language or not, such intent becomes as much a part of the law as if it had been expressed in plain and unequivocal terms. This was the rule announced by our Supreme Court in Mills County v. Lampasas County, 90 Tex. 606, 40 S. W. 403.

"2. Legislation, organic or statutory, must be reasonably construed and in a manner not repugnant to common sense. This rule is announced in Queen Insurance Co. v. State, 86 Tex. 250, 24 S. W. 397, 22 L.R.A. 483, and in St. Louis S. W. Railway Co. of Texas v. Tod, 94 Tex. 632, 64 S. W. 778.

"3. A public grant for a public advantage should be liberally construed in an endeavor to accomplish the purpose of the grant. This rule was announced in Aransas County v. Coleman-Fulton Pasture Co., 108 Tex. 216, 191 S. W. 553.

"4. In construing a law it will be presumed that the creators of same are familiar with the conditions to be relieved against and the condition of the county to which the act is applicable. Winona & St. P. R. Co. v. Barney, 113 U.S. 625, 5 S. Ct. 606, 28 L. Ed. 1109.

"5. If possible, that construction will be adopted which will promote the public interests in accord with sound economic policy. This rule was referred to in State v. DeGress, 72 Tex. 242, 11 S. W. 1029.

"6. In the construction of Constitutions, as well as statutes, the powers necessary to the exercise of power clearly granted will be implied. This rule was referred to in Texas Cent. R. Co. v. Bowman, 97 Tex. 417, 79 S. W. 295.

"7. Where a general power is conferred, every particular power necessary for the exercise of same is also conferred, whether expressly granted or not. This is the rule laid down in Cooley's Constitutional Limitations (8th Ed.) vol. 1, page 138.

"In addition to the above general rules of interpretation, we think that the rule announced by our Supreme Court, through Chief Justice Phillips, in Aransas County et al. v. Coleman-Fulton Pasture Company, 108 Tex. 216, 191 S. W. 553, 554, where section 52 of article 3 of our Constitution was under construction, is the rule of greatest application to the facts in this case. It is as follows:

"'The spirit, purpose and scope of the particular provision are all to be consulted in the effort to determine with certainty the meaning of its terms.'

"Applying that rule in this case, we have no hesitancy in concluding that the expenditure by the city of Port Arthur of its bond money above mentioned for the work done by the Central Construction Company in constructing the Stilwell Storm Drain was not prohibited and would not be in violation of section 8, article 11, of the Constitution. The spirit and the purpose that actuated the framers of that article was mainly the protection of the lives and property of people in cities situated on the Gulf Coast and always exposed to danger and hazards of the sea. Protection to those people and their property, we say, was the main and controlling thought, and in addition to that, and as incidental to that, was the benefit that would redound and accrue to the people of the whole state of Texas by protecting such of its citizens

as live in the exposed cities. It was known that many Texas counties and cities were so situated upon the Gulf Coast as to be constantly exposed to the ravages and destruction of gulf hurricanes, and the purpose of the framers of the article was to give protection, as far as possible through human skill and agency, to the lives and property of our citizens exposed to such hazards.

"We think that the trial court, under the evidence in this case, was correct in finding and concluding that the construction of the Stilwell Storm Drain, as contemplated, was an essential and necessary and component part of the sea wall project at Port Arthur, and that therefore the Stilwell Storm Drain when completed will be a part of the sea wall in the sense in which that term is used in section 8, article 11, of the Constitution."

In view of the holding in the above-cited case, it is apparent that the answer to the question submitted by you is dependent upon the determination as to whether the contemplated construction is an essential, necessary, and component part of the seawall project. When, as an engineering fact, it is necessary to replace, raise, and strengthen the inside bulkheads of the retaining wall in order to support the outside seawall, it is our opinion, based on the foregoing authorities, that such construction would constitute "an essential and necessary and component part of the seawall project" at Port Lavaca, Texas, and that your question should be answered in the affirmative.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _J. C. Davis, Jr._
J. C. Davis, Jr.
Assistant

APPROVED     SEP 15 1945

ATTORNEY GENERAL OF TEXAS

JCD/JCP


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN